And we'll turn to the last piece on the day calendar today, which is USA versus Andrea Dumitru, number 19-1486-CR. Good afternoon, your honors. Susan Wolf for Andrea Dumitru. Thank you for the opportunity to address you, especially under these current circumstances. The aggravated identity theft statute is, according to my research, which has been pretty exhaustive, one of only two statutes that require a mandatory consecutive sentence. And the other one is, of course, the famous one, possession or use of a firearm during a crime of violence. There are a couple other statutes that have consecutive sentences, but don't dictate what that sentence should be. There's bail jumping, and then for violations of supervised release, the guidelines say consecutive sentence is required, but the statute doesn't. By putting aggravated identity theft into this small group of two, Congress obviously thought that there was a problem. But the problem they saw was not the use of another's identification in a typical, and I don't mean to diminish anything, a typical in the realm of criminal conduct, in a typical case where another person's identification is part of the fact pattern, where during cases which have been prosecuted under the wire and mail fraud statutes for decades. The aggravated identity theft statute was enacted 2004 as the electronic age was maturing, access devices for everything are everywhere, and websites are being hacked where people's identities are stolen and money is stolen from them. And it's destroying people's credit ratings and exposing them to all sorts of other problems. And that's not what this case, Dimitri's case is about. The statute has to have parameters. Almost all of the circuits that have looked at it have mentioned it's potentially unlimited scope. And many of the circuits have articulated parameters. The first, the sixth, the ninth discussed or found that the conduct must at least involve the use of identification information to pass oneself, to pass the defendant's self off as another person. Some of those cases involve medical professionals who submit false Medicare claims for patients and line their pockets, but they're not passing themselves off as the patient. The Eighth Circuit looked at whether the use of the identification information or means of identification was just incidental to the crime. And it gave us an example, an accountant supplying his client's identification information in connection with false tax returns. That would not be covered by the statute. And then the Seventh Circuit focused on the other person, whether there was consent by the other person and the term another person, and whether there was the presence of a real victim, somebody who had suffered harm. And the corollary to that, a defendant who had acted for his own personal gain. Under each and every one of these theories, the evidence that Ms. Demetriou used another person's identification information within the meaning of the statute is insufficient. She was not pretending to be her client. She wasn't pretending to act on their behalf while secretly acting in her own interest. The clients weren't victims. They, according to the government, were co-conspirators. She did for them what they wanted her to do, which was try to get them temporary legal residence and the ability to work. With respect, and I'm gonna move on to the guideline issue, the enhancement for the, the guideline for the immigration fraud contains an enhancement of nine levels for the number of documents. And there's a section 2B1.6, which says that when a defendant is also being prosecuted for the underlying crime, there should be no enhancement for the transfer of possession or use of a means of identification. So 1028, identity theft, prohibits the use, possession, transfer of means, of identification during the commission of a crime. 2B1.6 says, no, that doesn't apply. And there's simply no, I know the government argues that victims are different than documents, but in this case, the applications, the immigration applications are the means of identification, which are the subject of 1028A, and they are the documents referred to in the immigration fraud guidelines, 2L2.1. And so it's either one or the other. The government can't have both. And in the same sense, in the firearm cases, you get either a six level bump up, or you get the 924C, but you don't get both. Finally, with respect to the sufficiency of the evidence for sentencing of a hundred or more applications, the testimony from the only person who would have knowledge was that he didn't keep track, but it was probably over a hundred, which is, you know, it's not good enough. And then there was the testimony of the immigration officials who said he looked at 105, and a hundred of them were fraudulent because they contained these repeated stories. Well, there's not a lot of margin for error in there. And I think it's fair to assume that any story that was repeated was true at least once. So there was not sufficient evidence of 100. Excuse me, do you have one more minute? Okay, I'd like to take that in rebuttal. Thank you. Ms. Wolfe, before you sit down, as it were, you probably are seated. Before your metaphorical seating, okay. Before my colleagues ask you any questions, we have a threshold question, which I should have flagged at the outset, but perhaps you can address very briefly in one minute. You have a motion, do you not, for release of your client from confinement pending her appeal? Yes, I do, Your Honor, and I can address it. Yes, and I understand that you want it to be heard at this time on that question. So take one minute. Everything I have just said equally applies to that motion. Basically, there's no issue of risk of flight, there's no issue of danger. It's going to come down to on the motions whether there are meritorious issues on appeal. And those are the ones we briefed and the ones we're arguing. And at the end of this, I'd ask Your Honor to make that preliminary determination of whether the issues are meritorious and the court may need additional time to decide them. And should you release Ms. Dimitri on bail pending appeal? And let me just ask a simple clerical question. I assume that you have not submitted your bail motion to the district court before you're submitting it to us. Is that right? There was a case cited in our papers that where the bail motion has been made after the appeal is fully briefed, that it's more appropriate to come to the Court of Appeals because the judge is on the panel. As a matter of fact, the district court has not considered any application for bail, is that right? No, it hasn't. There's a very strange confusion over that when we tried to submit it and we tried to get appointed CJA and we were told we had to go to the Second Circuit to be appointed, but no, he never ruled on it. He never, he's never submitted and never ruled on. All right, let me turn to my colleagues now and whether Judge Newman has any questions for you on either the threshold issue or the subject of the appeal. Just on the bail motion, I didn't quite understand. You said there was a problem when you tried to submit it to the district court. Could you amplify that a bit? Yeah, I may have misspoken. We were trying to first, as a preliminary matter, be assigned in the district court in order to file the bail pending appeal motion and he referred it or referred us to the Second Circuit, but in any event, we didn't plow ahead there. Who was he? You're referring to Judge Kaplan? Judge Kaplan, yeah. Okay. So you were not trial counsel, is that right? Right, I was not. And trial counsel did not file a motion? Oh, you came in only for the appeal, is that it? Right, my co-counsel in this case was, came into the case for sentencing to assist at sentencing. So she had been involved in the case during that part of the district court case. And then I was subsequently appointed to assist her on appeal. At that point, was trial counsel still a record defending the defendant? I guess so. I mean, at the point in which a notice of appeal is filed, and then we made an application to be appointed, then trial counsel is no longer counsel of record. All right. Any other questions, Judge Newman? No. Judge Hall. Thank you. Ms. Wolfe, just so I understand, or I'm trying better to understand your statutory argument, just confirm for me at least, or tell me where I am wrong, that appellant's argument is that because this centers around the use of the word uses, correct? Right. And the contention is that she did not use the, as a matter of law, she could not have used or did not use, or the government did not prove she used these identifications because, and then if you could fill in after that or tell me I am way off base. Because why? Well, because she did not use as in a manner that did the things that would make her conduct fall within 1028-A. She didn't impersonate her client, pretend to be her client. She didn't act on her purport to act on her client's path when in fact she was really acting on her own behalf for her own personal gain. Because she was using these identifications in order to obtain those clients, something for which she got paid. Well, her getting paid, I mean, when you look at the cases where the court finds. Well, could you answer my yes or no? Your Honor, could I trouble you to repeat it? Yes, and I will try to do that. Because she didn't, your contention is, or her contention is that, sorry, wasn't this a use of those identifications for her own remuneration? Because using the identification, she provided her clients a service for which she got paid. That would, if that were true, that would result in the kind of over-breath that a number of the courts talk about. That would encompass every accountant who. That's what happened, but you're saying that's not covered. Correct, it's not covered. Chief, listen, for all, professionals generally, I mean, they're hired by clients to do certain things. If they do things for themselves, if they have conflicts of interest, if they pocket money, if they do something contrary to the client's interest, then it is a use prohibited by the statute. But otherwise, it's okay, in your view, under the statute, to take somebody's identification, let's say, this is hypothetical, so don't tell me that's not the fact. Let's say, take a passport, submit that along with an application, which is false, in order to obtain something from the government, and that's not a use covered by the statute, is your contention? Correct, that's whatever crime, violation of a crime. What's your best authority for that proposition? A number of the cases, which- Give me your best one, go for it. Oh, okay, give me one second. United States versus Miller, those facts are very different. United States versus Medlock, and those are both Sixth Circuit cases. All right. And then there's, I mean, just to move into something a little different, but related, there's United States versus Spears, which is the one case, which has held that it's not a violation of the statute, if the client has consented to the identification. And we press that, recognizing that the way that the circuit is against us. That's the in-bank case from the Seventh Circuit, Spears, right? Yeah. So that's then the basis of your contention that the government had to prove that there was not consent? Correct. And didn't the government do that? No, the government did not. These, in the first instance of sentencing, the government referred to them as co-conspirators, and co-conspirators, under co-conspiracy law, they're agents of each other. So I'm not even sure it would be an issue of consent. There might not even be another person involved when the two individuals are agents for each other. And each of the clients who testified at the trial were people who were not eligible for asylum. And they knew they weren't eligible for asylum. They had contacted her, a couple of them contacted used to meet through a third party. And all they wanted was the end result, which was in order to stay in the country for some period of time legally. Couple of, at least two of them had criminal convictions in both the US and abroad. One of them testified that he didn't care what was in the application. And he just wanted another six months in the United States. And at the time he was engaged in ATM skimming. So, no, these individuals consented. They were consenting parties. Thanks, we'll, I'm sure hear from the government on that point. So that's all I have. Thank you very much. Okay, we'll hear from the government. May it please the court. My name is Robert Sobelman. I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal and in the district court below. As came out in the questioning, the defendant has two fatal flaws with her theories regarding count three. And they're factual flaws that cannot be overcome by setting a case or distinguishing a precedent. The first is that at least three of the cooperating witnesses who testified at trial who were prior clients did not consent. Sweden Tichou, and that's Supplemental Appendix 38, Cosman Cosma, Supplemental Appendix 49 through 50, and Richard Tikuchuk, Supplemental Appendix page 14. The second fatal flaw is that she ignores in her briefing and in argument today that the statute also criminalizes transfer and possession. So she is incorrect on the definition of use, and we've laid out the authority for our position thoroughly in our brief, which I can address if the court wishes, but the court need not even rule on that.  the jury was instructed on the theories of transfer and possession in 1028A, and there's no dispute. We would say it's not reasonably subject to dispute that the defendant was guilty under both of those theories as well as the use theory. Turning to the issue of use for a moment, there is no incidental or non-incidental test, but even if the court were to say, okay, let's assume that the use of a means of identification and the only thing that happened here was use, you know, what do we do then? Here, like in Gagarin, the use by the defendant of forged signatures of at least these,  was central to the fraud. The defense counsel mentioned Miller from the Sixth Circuit, Medlock from the Sixth Circuit. These cases do not help the defendant's position here. Miller did not restrict 1028A to cases involving theft or impersonation. And as Gagarin explained in discussing Medlock and Hong, it is always the case that 1028A criminalizes someone and quote unquote, using a means of identification if they are purporting to act on behalf of another person. And here, that's exactly what happened. For example, Mr. Tikachuk never knew until after it was filed, that an asylum application was going to be filed on his behalf. Did he wanna have some kind of status? Yeah. Did he ever communicate that to Ms. Dimitro? No, he had never spoken with her. He had never met her. He wasn't even in the United States, which of course is a necessary and mandatory prerequisite to applying for asylum. She and her colleagues at her direction, forged the signatures of Mr. Kichu, Mr. Cosma, Mr. Tikachuk and others, as Ms. Miron explained, which is supplemental appendix 22 and supplemental appendix 26. These individuals and many other clients never knew what type of relief the defendant was seeking on their behalf, didn't know what representation she was making. Even if they were okay with the general proposition that she was making misrepresentations on their behalf or helping them commit a fraud, they were never consulted about whether the narrow question here, whether the signatures were permitted to be used on their behalf. So if we're looking at the narrow question that the defendant has focused on here, which is, did her client, or at least some of her clients in the trial proof, consent to the use of their means of identification, which there are many means of identification here. The defendant has chosen to focus on the signatures, but there's also birth dates, there's passport numbers, there's alien numbers, and all of that was before the jury. The answer with respect to consent is there is no basis in the record that anyone consented to the defendant forging their signatures. And those are the facts with respect to that. I will turn just briefly to bail, since your honor, since the court raised it. The government planned on responding in writing in the usual course, which our responses do, I believe, on May 18th. However, I wanna just point out, we strongly and strenuously disagree with defense counsel that Ms. Dimitri does not constitute a risk of flight. And Judge Kaplan did have the opportunity to discuss bail and rule on bail pre-sentencing. The court was correct that Ms. Dimitri never filed an application for bail pending appeal with the district court, even though the sentencing occurred slightly over a year ago. It's not something she ever pursued with trial counsel or appellate counsel. But Judge Kaplan, in remanding the defendant on the very day that the jury convicted her while we were still in the courtroom, found then and at a subsequent hearing the following week that the defendant posed a significant risk of flight for a variety of factors that I can discuss if the court wishes to go into it now. But the government has serious concerns in that regard. And even on top of our view that her appeal is not likely to succeed on the merits and that she has a 36 month sentence even before she begins to serve the 1028A sentence that needs to be expired, the government does have serious concerns about her risk of flight. Unless the court has questions, that can conclude my presentation. Thank you. Judge Newman. Yes, I do have a few. Let's start, let's go through the superseding indictment. Well, originally you didn't charge identity theft, is that right? That's correct, Your Honor. You charged a violation of 1546, a false asylum application, and then a false statement, right? That's correct, Your Honor. Okay, now there's no challenge on appeal to the 1546 conviction. There may be a challenge to the sentence, but not to the conviction, is that right? That's correct. Okay, and the 1546 violation is filing a false application for asylum. And it's false in that they made misrepresentations to the Department of Homeland Security and the Department of Justice, right? That's correct, Your Honor. Now, count two says they made false statements to the Department of Homeland Security and the Department of Justice. What's the difference between count two and count one? Your Honor, we argued multiplicity before the district court. These were two alternative theories that captured essentially the same conduct. And there was no penalty in the guidelines, calculations of the defendant by being convicted of both. But because the district court found, we believe correctly, that each count contained an element that's not contained in the other, the jury was asked to render a verdict on both counts and convicted on both counts. What's the element? It largely captures the same conduct. Yes, as you say, it largely captures the same conduct. So I'm curious, what is the element in count two that isn't in count one? Your Honor, I don't have it off the top of my head. I will make an effort to pull up our briefing. It's not an issue that had been raised since post-trial briefing about a year and a half ago. So I apologize for not having that on top of my mind. Well, I appreciate that. And I understand it isn't raised and it doesn't affect the sentence, but conceivably, if somebody is in prison, multiple counts have some bearing. And I'm just wondering why the government would take a clear-cut false application case and say, well, it's false in that you made a false application to the immigration. And then it's false in that you also made a false statement to the immigration people. If it's not multiple- Your Honor, I actually, yeah. Your Honor, I actually recall, as Your Honor has been speaking, I now recall sort of the factual reason that we thought this might be useful to us just in case there was an issue at trial. Part of it is that the defendant did make oral statements or assisted others, they did abetted others in making oral statements. For example, in Sweden, Kichu testified that when he was in a immigration interview with an asylum officer, Ms. Demetriou coached him outside and actually during the interview to lie to the asylum officer. And we wanted to make sure that those statements, oral statements would be captured by the counts. And I just don't recall at the moment whether 1546 would also cover oral statements the way that 1001 certainly would. You weren't sure that the asylum fraud statute covers oral statements? Again, Your Honor, I haven't considered this question for about a year and a half, but that may have been one of our considerations. Okay. If Your Honor is interested in, just in case Your Honor is interested after the argument in this, our brief on the post-trial motions discussed the multiplicity issue. Okay. And it's a document. Yeah, it's a docket 91 on the district court's record. Okay, I can find it there, thank you. All right, now moving on to count three, which is what added the mandatory two years, aggravated identity theft. What precisely was stolen by the defendant? Your Honor, aggravated identity theft does not require that one steal something. Well, it's called theft, which sort of suggests, isn't the theft and stealing, aren't they pretty similar concepts? Your Honor, I know it can be, a little confusing the way that Congress chose to caption the statute, but the fourth circuit in Abdel Shafi- No, I'm not talking about your charge account. Count three is captioned, aggravated identity theft. Yes, Your Honor, that's the title of the statute. It's not a name that the prosecutors in this case chose to accord to that crime. I think if one were to recaption it more accurately, it would be used possession or transfer of the means of identification of another person without lawful authority. That's just a mouthful, and I think that's perhaps why Congress tried to use something shorter, but aggravated identity theft, that term doesn't necessarily capture the full scope of the conduct in the statute. And the fourth circuit in Abdel Shafi footnote four actually refers to the Supreme Court's Yeski decision and quotes it saying the title of the statute cannot limit the plain meaning of its text. As I'm sure Your Honor is aware, in the eighth circuit decision in Gatwitz and the first circuit decision in Ozuna Cabrera, they conducted a fairly detailed examination of the statutory and legislative history and found that the natural reading of the plain text is consistent with the purposes of the statute, discussed by Congress, and the examples of the situations it was meant to cover, which are not just, quote unquote, theft in the traditional sense. All right, as we explained in our brief on page 20, both theft and fraud. All right, so let's go beyond the requirements of theft, and there was the taking of something or the use of something, is that what you're saying? Yes, Your Honor, the defendant here used, possessed, and transferred, although of course we only need proof one, we actually proved all three. Used, possessed, and transferred means of identification of another person. Here are at least three other people, or sorry, at least four other people, because those are the four that testified, although I think there's a fair inference that she did it for all of those that had. Let's start with used. They used a means of identification. Is that the signature? Is that where the means of identification was used by signing the application? There are several means of identification that were put before the jury. The forged signatures, I think both sides recognize as sort of the most egregious, but there were also dates of birth, passport numbers, photographs. Well, let's go one at a time. When you say date of birth, how did they take the date of birth from the witness? So Your Honor, there's nothing in the statute about taking, but they did receive it. They received it? And I'll note, Your Honor, yes, Your Honor. If you're asking how the defendant obtained the date of birth, the answer is they received it from either the client or someone acting, at least purportedly, on the client's behalf. So if the client comes in, and leaving out for just a moment, Mr. Chikiu, I'm probably not pronouncing it right, C-H-I-C-I-U, leaving him aside for just a moment, if the other clients came in and said, we want an asylum application, and Ms. Dumitru says, well, I do that, is it identity theft to prepare an asylum application and then sign the client's name to it? Without the client's, I guess, so you're saying if Ms. Dumitru had actually met these individuals, they had actually provided true information, or information, at least, she believed to be true, would it be aggravated identity theft to sign, to forge their signature, either with or without their permission? Yes. Is that Your Honor's question? So likely no, because the requirement in the statute is that the possession, use, or transfer be done both during and in relation to an enumerated felony, here, 1546 and 1001. And also, that it be done without lawful authority. So there are other elements that limit the scope of the statute. Okay, it's the falsity of the application that renders the signing a receipt, as you put it, of signature, is that right? I'm not sure. I'm not the other way. If they had just signed, if they had prepared a truthful application, and put the client's name on it, there'd be no count three violation, is that right? It's not clear, because the issue is, the signature of the applicant on an asylum application actually literally needs to be the signature of the applicant, and then the attorney underneath that has to certify with their own signature, under oath, that the client signed in their presence in the United States. So it's a little complicated here, because if a lawyer, let's say, prepared a truthful application, but then forged their client's signature, even with their client's consent, and then certified that the client himself signed it, I think it's fair to consider that a criminal violation. That would potentially be- Oh, clearly a criminal violation. And that would potentially be a predicate for a 1028-A. Well, it'd be a violation of count, when you say it would be a criminal violation, I fully agree with you. It would be clearly a violation of count one, the false, it would make it a false asylum application, would it not? Yes, Your Honor. Okay. So you would already have a false asylum application, you'd have a valid conviction of count one, but you wanna use identity theft in addition to get two more years of sentencing. Is that the situation here? I'm not sure if I understand Your Honor's question. You're the defendant met all of the elements of count three, we established it beyond a reasonable doubt to the jury, the jury found that that was the case, and there is no case that we are aware of, including Spears, that would, if the circuit followed it, would lead to the defendant being acquitted on that count. Because there was no consent, and in addition to the use, there was possession and transfer, which the defendant doesn't even address and doesn't contest. And there's no case limiting the scope of those that's been cited to this court. Tell me what the word transfer adds to this situation. Well, here, Your Honor, it's interesting that the defendant has chosen to focus on use, I think because there's some case law about it. But here, the defendant's principal personal role in committing the offense of the 1028A was actually the transfer. So the way- To the government, you mean? Yes, Your Honor. So the way that this generally worked is, Mr. Mitra would direct her- You mean transferring the asylum application to the government? Is that the transfer? Transferring, yes, Your Honor, an asylum application that bears a signature, a forged signature, among other types of means of identification. Remember, there's, as I mentioned, dates of birth, passport numbers, alien numbers, in some cases, Social Security numbers. There's a number of different means of identification, but including the forged signatures that the defendant directed her employees to forge on the application, the employees, in some circumstances, would mail them. But in many circumstances, including those involving some of the cooperating witnesses at trial, she physically took those applications from her employees and filed them in person in open immigration court with a certification on the bottom, and her signature underwrote that everything in the application was true and accurate to the best of her knowledge, including that the- Now, in a- Yes. All right, in a typical identity theft case, the victim, the person whose identity is stolen, or, as you say, used, or used, possessed, or transferred, is a victim of the crime. Isn't that fair to say? Your Honor, I think it depends how one views a victim. I mean, here, defense counsel earlier incorrectly stated- Yeah, leaving aside Mr. Chiklue, if all these people come in to Ms. Dimitro and say, look, I want asylum, and she says, I do that, and she files a whole lot of asylum applications, and they're false, but they go through, and the IJ believes them, and they all get asylum, who would be the victim, other than the U.S. government? Well, so there are two points. First is there's no element in 1028A that the other person, the other real person whose identity is being used, possessed, or transferred, be categorized as a quote-unquote victim, whatever that might mean. Because it's not an element of the statute, it's never been discussed in the case law, as far as I can tell, what it would mean to be a victim. The cases that are the best for the defense are ones like Spears, that talk about consent or non-consent. Here, there's no consent. I also wanna note, U.S. government is a victim and a real victim, because the use of a real identity, of another person's real identity, makes it harder for the government to detect the fraud. And here, that was actually the case, where the defendant was filing dozens and dozens of nearly identical applications, and members of the immigration office, members of the immigration bar and the court, were starting to notice that there were very similar applications. And the first suspects were actually the client, not the lawyer. Because everyone assumes a lawyer is not going to sign under penalty of perjury, that these people were there and told her this, if that wasn't true. But- One other thing. Yes, Your Honor. Mr. Cichlou, as I see the record, Mr. Cichlou said he did not know that Mr. D'Amico planned to file an asylum application. Is that right? That's correct, Your Honor. And Mr. Kikuchuk, I believe, did the same thing. And who? Mr. Kikuchuk, it's T-C-A-C-I-U-C. I believe he also had no idea that, what type of relief, if any, the defendant would seek on his behalf. That's the reference of page 14 of your supplemental appendix. Page 14 of the supplemental appendix is when that same individual discusses the fact that he never gave anyone consent for his signature, but that'll lead you to the part of the appendix with his testimony. All right, one last thing. Did the jury charge in any way say or imply to the jury in order to convict on count three, you would have to find that at least one person never knew this was, never asked for an asylum application? No, I don't believe so, Your Honor. And I don't think either, even the defense has argued that they would have to not be aware of or not know of the potential use of, or possession or transfer of their means of identification. And as far as I'm aware, there's no case that would support that proposition.  that would have a case that would support that proposition. I don't believe the instructions did. And just to be sure I understood your previous answer a few minutes ago. You would say there's a count three violation if the asylum application was true as to its content, but the signature of the alien was forged. So under that circumstance, I think Your Honor and I agreed that there would be a 1546 violation because the application is not true because a very important part of the application is that the defendant, sorry, the defendant, the client actually reviewed the application, attested to the truth of its content and signed in person in the presence of the defendant in the United States. All those things are very important for reasons that are set forth in the testimony. Okay, but you're saying if the application in its substance, in other words, it's accounts of what happened abroad, if they were all true, but the signature of the applicant were false, that would not only be a count one violation, it would also be a count three violation. If the attorney either forged the signature or knew that the signature was forged and that it was false, that the signature, that the client did not, in fact, review and sign in the United States that particular application, then yes, that could be a predicate for the possession, use or transfer of a means of identification of another person during in relation to the underlying 1546 and without lawful authority. The answer is yes, but I wanna emphasize, we have so much more here, that this is not that case. Even if your honor thought, well, that's a closer case, this is certainly not that case. Okay, thank you. Even if your honor were to adopt the defense's legal views wholesale, the court would still be required to affirm. Okay. Judge Hall. I have no further questions, thank you. And I have no questions. And maybe Ms. Wolf would like to take advantage of a minute or two of reply. Absolutely, thank you. There, I have not found a case where the issue was solely transfer or solely possession. The cases seem to say that those acts are folded into use. And I don't think there's any law on that as of yet, but it's hard to imagine a scenario where someone possesses a means of identification, doesn't transfer it and doesn't use it, but it's still committed a crime in relation to it. But in any event, if it could simply be a transfer or possession of a means of identification, then the statute would be wildly broad. It would cover every accountant, every physician who gets information from their clients and does something that they couldn't do. And any service provider. So it would just become a natural part of most fraud cases, at least. With respect to the clients, they- Excuse me, you have one more minute. Okay, with respect to the clients, they were in each and every case, made a criminal agreement with Ms. Dimitri to get something from the United States they weren't entitled to. So most importantly, I wanted to say, the jury didn't find specifically which of these clients were the basis for the conviction, which are all or some were the basis for a conviction on the 1028 count. And under those circumstances, if the court were to find that the evidence with respect to any one of them is insufficient, then it would have to determine whether the evidence with respect to the other clients was overwhelming. So that kind of analysis, that would be the analysis the court would have to undertake. And finally, with respect to the bail issue, my understanding, and I wasn't there, is that Judge Kaplan remanded our client because she'd been convicted of a mandatory two-year sentence. So that nothing was gonna happen between sentencing and the whole outcome of the appeal that was gonna change for having to be in jail. Thank you, Your Honor. Thank you very much. The case is submitted. That's the last case on the day calendar today. We are adjourned. Thank you. Court is adjourned.